STATE OF WEST VIRGINIA

*In re* A.C.

No. 20-0374 (Barbour County 19-JA-47)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Custodian N.B., by counsel Jamella L. Lockwood, appeals the Circuit Court of Barbour County's February 26, 2020, order terminating his custodial rights to A.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Allison C. Iapalucci, filed a response on behalf of the child also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating his custodial rights without first granting him an improvement period and in terminating his custodial rights rather than imposing a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed a child abuse and neglect petition against the mother and petitioner, the mother's live-in boyfriend. The DHHR alleged that petitioner and the mother abused drugs in the home while caring for the child and exposed her to other drug addicts and drug dealers. Further, the home was without utilities such as water and heat during very cold weather. The DHHR also alleged that, as of the petition's filing, petitioner had been arrested for possession of a controlled substance.[2] Lastly, the DHHR alleged that the mother and petitioner failed to provide

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]It appears from the record that petitioner eventually pled guilty to this charge and was placed on home incarceration.

basic necessities for the child and educationally neglected her, as the child reported a lack of food in the home and had missed at least sixty-five days of school. Petitioner waived his preliminary hearing.

The circuit court held an initial adjudicatory hearing in August of 2019. The circuit court was advised that petitioner tested positive for methamphetamine on several occasions, sometimes at very high levels, and had not submitted to any drug screens since July of 2019. Petitioner admitted that he abused methamphetamine a few days prior to the hearing. Petitioner expressed a desire to stipulate to the allegations contained in the petition but, upon questioning, was evasive and denied claims the child made during a Child Advocacy Center ("CAC") interview. Given petitioner's dishonesty, the circuit court continued the hearing to allow for more evidence. The DHHR also stated that it intended to file an amended petition.

Later in August of 2019, the DHHR filed an amended petition alleging that petitioner and the mother were evicted from their home earlier in August due to their failure to pay rent for several months and that they ultimately were removed from the home by law enforcement officers. The DHHR also alleged that a law enforcement officer found six individually wrapped hydrocodone pills in petitioner's possession. Lastly, the DHHR alleged that petitioner tested positive for methamphetamine following the adjudicatory hearing.

The circuit court reconvened the adjudicatory hearing in October of 2019. Petitioner appeared in person, and the circuit court was advised that he had been transported to the hearing from jail. Due to his continued drug abuse, petitioner's home incarceration had been revoked. The circuit court questioned petitioner, who continued to be evasive. Essentially, petitioner admitted that he was addicted to drugs, specifically methamphetamine, and that it impaired his ability to parent the child. Petitioner minimized the effect his drug use had on the child, denied the disclosures from her CAC interview regarding the amount of drug abuse in the home, and failed to recognize the significance of how many days of school the child missed. Ultimately, the circuit court found that petitioner's "drug seeking behavior led to the failure of [petitioner] to provide the basic necessities of life, and exposed the child to dangerous situations, including the people and risks commiserate [sic] with being a member of the drug culture." The circuit court further found that petitioner's neglect "spilled over into the [child's] education" as she had missed sixty-six days of school and was in special education classes with an individualized education plan. The circuit court also found that petitioner "squandered limited family resources on methamphetamine" and that his extremely high levels on his drug screen results indicated that he was severely addicted. Accordingly, the circuit court adjudicated petitioner as an abusing and neglecting custodian and denied his motion for a post-adjudicatory improvement period.

In January of 2020, the circuit court held a dispositional hearing. The DHHR presented the testimony of a CPS worker, who stated that petitioner participated in a few services at the beginning of the case but that the services were eventually closed due to his failure to participate. The CPS worker also testified that petitioner tested positive for methamphetamine several times throughout the proceedings. While petitioner attended a short-term rehabilitation program as part of his criminal proceedings, he caused "some sort of disruption and was kicked out of the program."

The director of the local community corrections program testified that petitioner submitted to twenty-seven drug tests, eighteen of which were positive for methamphetamine. The director testified that four of petitioner's positive tests exceeded 100,000 nanograms and two tests exceeded 200,000 nanograms. The director explained that these levels were extremely high and that "[a]nything over 300 is extremely high." A worker from Jobs and Hope West Virginia testified regarding her attempt to provide services to petitioner.[3] The worker testified that she met with petitioner on one occasion but was unable to provide him with services because he failed to submit the intake paperwork.

Petitioner did not testify, but his counsel indicated that he was "still willing to step forward and do the things that he needs to do." At the close of evidence, the circuit court found that no progress had been made since the filing of the petition. Although petitioner was denied an improvement period, he "still had counsel and was free to take independent steps to address those issues that prevented the [c]ourt from granting him an improvement period." The circuit court noted that petitioner did not complete treatment and did not avail himself "of any of the various services out here in the world." The circuit court further found that petitioner "didn't get it" despite having been offered several opportunities to address his addiction issues. Accordingly, the circuit court terminated his custodial rights upon finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. Petitioner appeals the February 26, 2020, dispositional order terminating his custodial rights to the child.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[3]According to the worker, Jobs and Hope West Virginia is a program dedicated to "helping people who are either in recovery or possibly coming out of incarceration to basically gain job skills through education primarily, help them eliminate barriers that they have to career[s] and employment, and ultimately be able to help them find a job."

[4]The mother's parental rights were terminated during the proceedings below. The biological father's parental rights were terminated during prior proceedings. The permanency plan for the child is adoption by her foster family.

On appeal, petitioner first argues that the circuit court erred in terminating his custodial rights without granting him an improvement period.[5] According to petitioner, he "recognized that he had problems that he needed help with." Petitioner states that he acknowledged his drug problem and began to actively participate in drug treatment and testing during the proceedings. Petitioner contends that he had limited funds to pay for services without the assistance of the DHHR and never refused to participate in any services.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (quoting W. Va. Code § 49-6-12(b)(2) (1996)).

Contrary to petitioner's assertion that he was not offered services, the record reveals that he was provided with random drug screens and offered services through Jobs and Hope West Virginia. However, petitioner failed to submit his intake paperwork and continued to test positive for methamphetamine throughout the proceedings. In fact, petitioner's levels for methamphetamine were extremely high and life-threatening. Petitioner pled guilty to drug-related charges during the proceedings and was sentenced to home incarceration, which was revoked due to his continued drug use. While petitioner claims he entered drug treatment on his own, the record demonstrates that petitioner was granted the opportunity to attend treatment as part of his criminal case and, coincidentally, caused a disturbance and was kicked out of the program on the same date the mother left her treatment program. Finally, petitioner evaded the circuit court's questioning, denied the extent of drug abuse in the home, and minimized the effect of the abuse and neglect on the child. We have previously held that failure to acknowledge the issues of abuse and neglect render an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on petitioner's failure to demonstrate his likelihood of fully participating in an improvement period and his failure to acknowledge the issues of abuse, we find no error in the circuit court's denial of his motion for a post-adjudicatory improvement period.

---

[5]To the extent petitioner takes issue with the circuit court's characterization of his rights "flowing from the mother," we find no error. During the proceedings below, petitioner was noticed as a respondent parent, was appointed counsel, and was permitted to participate in all hearings and in several services provided by the DHHR. Accordingly, there is no indication that petitioner was not provided with all the rights due to him as a custodian. Moreover, although the circuit court terminated petitioner's custodial rights, in part, based upon the termination of the mother's parental rights, the dispositional order clearly sets forth petitioner's failure to address the conditions of abuse and neglect. As such, we find that petitioner is entitled to no relief in this regard.

4

Petitioner next argues that the circuit court erred in terminating his custodial rights instead of imposing a less-restrictive dispositional alternative. According to petitioner, imposing disposition pursuant to West Virginia Code § 49-4-604(c)(5) for both him and the mother would have allowed them time to improve on "their protective parental capacities, their continued sobriety and continued participation in services to remedy the circumstances giving rise to the abuse and neglect in this case." Petitioner contends he was voluntarily participating in services below and a less-restrictive disposition would have been appropriate. Petitioner further claims that if the mother had been permitted to work on services such that she regained partial custody and visitation, petitioner could have maintained his custodial relationship with the child through the mother.[6] Lastly, petitioner argues that the circuit court could have placed the child with a family member, which would have allowed petitioner the time to address the conditions of abuse and neglect without disrupting the security in placement for the child.[7]

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning."

The evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, petitioner's

---

[6]To the extent petitioner makes arguments regarding the termination of the mother's parental rights, we note that he lacks standing to assert an assignment of error on behalf of another party. We have previously held that

> "[t]raditionally, courts have been reluctant to allow persons to claim standing to vindicate the rights of a third party on the grounds that third parties are generally the most effective advocates of their own rights and that such litigation will result in an unnecessary adjudication of rights which the holder either does not wish to assert or will be able to enjoy regardless of the outcome of the case." *Snyder v. Callaghan*, 168 W.Va. 265, 279, 284 S.E.2d 241, 250 (1981) (citation omitted).

*Kanawha Cty. Pub. Libr. Bd. v. Bd. of Educ. of Cty. of Kanawha*, 231 W. Va. 386, 398, 745 S.E.2d 424, 436 (2013). This concept has been recognized in regard to parties of child abuse and neglect proceedings. *See In re J.G.*, No. 16-0337, 2016 WL 4611246, at *3 (W. Va. Sept. 6, 2016)(memorandum decision) (recognizing that petitioner father lacked standing to appeal limitation on mother's visitation). As such, the Court declines to address this argument on appeal.

[7]Petitioner fails to cite to any portion of the record indicating that a family member expressed interest in placement of the child. Accordingly, petitioner's argument is purely speculative and, as discussed more fully below, termination of petitioner's custodial rights was in the best interest of the child.

pervasive drug use continued throughout the entirety of the proceedings. Indeed, the record establishes that petitioner submitted to twenty-seven drug screens and eighteen of those screens were positive for methamphetamine. Six of those screens indicated extremely high, life-threatening levels of methamphetamine. Further, petitioner was arrested on drug-related charges, and his home incarceration was revoked due to his continued drug use. While petitioner claims that he was unable to participate in any services due to the circuit court's denying his request for an improvement period, petitioner failed to take advantage of the opportunities he was given during the proceedings. Petitioner entered a drug treatment program and was removed for creating a disturbance, and he failed to submit the intake paperwork for services through Jobs and Hope West Virginia. Finally, as demonstrated above, petitioner failed to grasp the gravity of the situation or acknowledge the extent of his abuse. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. While petitioner claims the circuit court should have imposed a less-restrictive alternative to the termination of his custodial rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). In sum, the circuit court's findings are fully supported by the record below, and we find no error in the termination of petitioner's custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 26, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison